UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| LISA A. DIXON, | ) |
| | ) |
| Plaintiff, | ) Civil No. 6:19-cv-293-JMH |
| | ) |
| V. | ) |
| | ) |
| ANDREW SAUL, | ) **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

\*\*\*\*

Plaintiff Lisa A. Dixon brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her applications for disability benefits. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

## I. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review,

1

resolve conflicts in the evidence, or make credibility determinations.  *Id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. DISCUSSION

In November 2016, Plaintiff protectively filed her current applications for disability insurance benefits (DIB) and supplemental security income (SSI). (Tr. 109-110, 261, 267). Additionally, in January 2017, Plaintiff filed an application for Disabled Widow's Benefits. (Tr. 111, 277). In all three applications, Plaintiff alleged disability as of August 1, 2013.

2

The applications were denied initially and on reconsideration and by an ALJ after an administrative hearing, (Tr. 32-72). The Social Security Administration's Appeals Council then declined Plaintiff's request for review, (Tr. 1-6), making the ALJ's December 5, 2018 decision the final agency decision for purposes of judicial review, (Tr. 9-31). 20 C.F.R. § 422.210(a). This appeal followed and, after briefing, the case is ripe for review pursuant to 42 U.S.C. § 405(g).

Plaintiff was 50 years of age as of her amended alleged disability onset on February 1, 2017 and 52 years of age as of the Commissioner's final decision on December 5, 2018, (Tr. 261). Plaintiff has a college education (two associate degrees) and past relevant work. (Tr. 67, 327). In materials associated with her initial applications, she alleged she was unable to work due to mental impairments. (Tr. 326).

During the period approximating Plaintiff's amended alleged disability onset date in February 2017 and the ALJ's decision in December 2018, the relevant medical record reflects that Plaintiff's treatment was primarily from Mountain Comprehensive Health (MCHC), including by Byron Thomas, D.O., and mental health nurse practitioner, Anita Collins McCullun, and from Appalachian Regional HealthCare (ARH). At numerous examinations performed during the relevant period, Plaintiff presented inter alia as being alert, well appearing, not in distress, fully oriented, with normal

3

musculoskeletal and neurological examinations (Tr. 836, 840, 894, 1089-1090, 1093). Further, at numerous examinations, Plaintiff failed to report or even denied vertigo or dizziness symptoms (Tr. 704, 717, 888, 1022, 1043, 1094). Plaintiff received additional treatment at the Asthma & Allergy Center and the Kentucky Sleep Apnea Center. In May 2018, Plaintiff reported to a Kentucky Sleep Apnea Center provider that she had not experienced any recent vertigo after beginning a low-salt diet. Physical examination revealed no evidence of middle ear pathology. (Tr. 1089).

Notwithstanding the generally normal examination findings and Plaintiff's not reporting vertigo or dizziness symptoms, as noted above, in November 2017, MCHC provider, Dr. Thomas completed a medical source check-box questionnaire form containing his responses about Plaintiff's ability to perform physical work-related activities as related to Plaintiff's alleged Meniere's Disease. Without supporting medical/clinical findings, and on what appears to have been largely premised on Plaintiff's subjective complaints, Dr. Thomas reported inter alia that Plaintiff was subject to Meniere's attacks an average of five times per week, with such attacks lasting two hours and being worse when standing. Dr. Thomas also reported that Plaintiff was unable to perform daily activities. (Tr. 1009-1013).

In May 2018, nurse practitioner Anita Collins McCullun, provided an overly restrictive two-page check-box form mental

4

assessment, without requested supporting medical/clinical findings, as to Plaintiff's ability to perform mental work-related activities. In addition, the form provides no narrative or comment as to the basis for the assessment provided. Dr. Thomas also appears to have provided an undated endorsement of Ms. McCullun's opinion as to Plaintiff's mental functioning. (Tr. 1086-1087, 1162-1163).

State agency psychological consultants Kay Barnfield, Psy.D., and Shambra Mulder, Ph.D., reviewed the record in February 2017 and May 2017, respectively. (Tr. 77-78, 121-122).

Dr. Barnfield opined that Plaintiff was not subject to a severe mental impairment with mild limitations in understanding, remembering, or applying information; interacting with others; in concentration, persistence, or in maintaining pace; and in adapting or managing oneself. (Tr. 77-78). Three months later, Dr. Mulder echoed Dr. Barnfield's opinion that Plaintiff was not subject to a severe mental impairment. (Tr. 121-122). Both Dr. Barnfield and Dr. Mulder noted that Plaintiff's mental status exams have been consistently within normal limits. (Tr. 77-78, 121-122).

In June 2017, state agency physician, Allen Dawson, M.D., opined that Plaintiff had abilities consistent with medium exertion work with additional postural and environmental limitations.

Dr. Dawson specifically noted normal physical examinations during the period from Plaintiff's originally alleged disability onset date. 20 C.F.R. § 404.1567(c) (medium exertion); (Tr. 123-126).

At her August 2018 administrative hearing, Plaintiff testified that she last worked in January 2017. (Tr. 36). She said that her worst problems were irritable bowel syndrome (IBS), bipolar and depression. (Tr. 40). In additional testimony, Plaintiff described her alleged impairments, symptoms, and associated treatment. (Tr. 40-55, 60). She said that she has a driver's license and drives wherever necessary, including to visit friends or go to restaurants. (Tr. 56). In response to prompting from her counsel, Plaintiff testified that Meniere's makes her dizzy (vertigo) about once a month for about four days. (Tr. 56-59). In response to follow up questions from the ALJ, Plaintiff testified that she had been experiencing dizziness only since the spring of 2018. (Tr. 62-63). Finally, Plaintiff said that she has a college education (two associate degrees). (Tr. 67).

A vocational expert (VE), Betty Hale, also testified. (Tr. 65-71). After testifying as to Plaintiff's past relevant work identified as a bank teller, administrative assistant, credit clerk, and telephone operator, (Tr. 66), the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and work experience, with limitations the same as those ultimately

determined by the ALJ to be those of Plaintiff. The VE testified that such an individual could perform Plaintiff's past relevant work as well as the representative unskilled medium exertion occupations of cashier, laundry worker, and bagger. (Tr. 69-70). The VE further testified that her responses were consistent with the Dictionary of Occupations Titles (DOT). (Tr. 71).

After a careful review of the record, the ALJ found that during the relevant period she had severe impairments consisting of obesity, an anxiety disorder, and depressive disorders, with Meniere's disease and asthma that were not severe under the Act. (Tr. 15: Finding No. 5). ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment including, specifically, spinal, depressive, and anxiety disorders (Tr. 16-17: Finding No. 6). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a broad range of medium exertion work activities with additional specific postural and mental limitations, (Tr. 17-22: Finding No. 7), and that medically determinable impairments could not reasonably be expected to impose symptoms of the intensity, persistence, and limiting effects alleged, (Tr. 18).

After finding that Plaintiff could perform her past relevant work, (Tr. 22-23: Finding No. 8), the ALJ further found that Plaintiff retained the capacity to perform the representative unskilled medium exertion occupations of cashier, laundry worker

7

and bagger, existing in significant numbers in the national economy, (Tr. 23-24: Finding No. 12). Therefore, the ALJ found Plaintiff was not disabled under the Act from her amended alleged disability onset date in February 2017, through the Commissioner's final decision on December 5, 2018, now before the Court, (Tr. 24: Finding No. 13)

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek*, 139 S.Ct. at 1154. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the court would have resolved the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Tyra of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S.Ct. at 1157.

Here, Plaintiff's first challenge to the ALJ's decision is her claim that the ALJ should have considered her alleged Meniere's

8

Disease to be a severe impairment at step two of the sequential evaluation. [DE 13-1, at 1, 4-5]. This is a largely academic question because the ALJ found that Plaintiff did have severe impairments and continued in the sequential evaluation. Moreover, in his reasonable RFC determination, the ALJ continued to provide further evaluation of the evidence associated with Plaintiff's Meniere's Disease, (Tr. 20-22). *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (unpublished) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.3d 240, 244 (6th Cir. 1987)); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

Thus, the finding of non-severity as to Plaintiff's alleged Meniere's Disease is not legally relevant because the ALJ went on to determine Plaintiff's RFC between steps three and four, and, at that point, was required to consider her severe and non-severe impairments. *See* 20 C.F.R.§ 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . ."). In his December 2018 decision, the ALJ pointed out that he was required to do so, and it was exactly what he did. (Tr. 14, 20-22).

Moreover, in support of his justifiable step two determination as to the non-severity of Plaintiff's alleged Meniere's disease, the ALJ also pointed out numerous instances when Plaintiff failed to report or even denied vertigo or dizziness symptoms at examinations during the relevant period. (Tr. 15; Tr. 587, 704, 717, 888, 1022, 1089, 1092). This is further reflected in the ALJ's reasonable RFC evaluation and in his according only minimal weight to Dr. Thomas's check-box form opinion (void of supporting objective findings), in part, because of Plaintiff's conflicting self-reporting as to the existence of dizziness symptoms and the duration of her Meniere's episodes. (Tr. 21; Tr. 1009-1013). *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the [ALJ]'s findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *see also Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (unpublished) ("[t]his court does not weigh evidence, assess credibility or resolve conflicts in testimony – that's the ALJ's job.").

Moreover, the ALJ noted that he had carefully considered the entire record in making his findings of fact and conclusions of law including his justifiable step two, step three, and RFC findings. (Tr. 15, 17: Finding No. 7). The ALJ discussed relevant medical evidence, including the findings and opinions obtained

from Plaintiff's treating medical sources, as well as state agency medical consultants, Drs. Dawson, Barnfield, and Mulder, in reasonably determining which of Plaintiff's alleged impairments were severe, the level of severity at step three, and that Plaintiff retained the RFC to perform a range of medium exertion work with additional specific and significant postural and mental limitations, (Tr. 15-22, Finding Nos. 5, 6; Tr. 77-78, 121-122). *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Therefore, the ALJ reasonably found that the impairment at issue was not severe because it did not have more than a minimal effect on Plaintiff's ability to perform work activities, (Tr. 15; Finding No. 5). *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden at step two of showing that he has a medically severe impairment or combination of impairments). Thus, the Court rejects Plaintiff's step two argument.

As to the ALJ's justifiable finding at step three of the sequential evaluation, it is noted that the ALJ pointed out that although Plaintiff had "severe" physical and mental impairments, they did not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 C.F.R. Subpart P, Appendix 1). This would include Meniere's Disease under Listing 2.07,

depressive disorders under Listing 12.04, and anxiety disorders under Listing 12.06, of the Listing of Impairments. As the ALJ justifiably determined that Plaintiff's alleged Meniere's Disease did not rise to the level of a severe impairment, the Court finds that it is axiomatic that the ALJ also would not find it to meet the criteria of any listed impairment. *See* 20 C.F.R. § 404.1522(a) (impairment is non-severe if it does not significantly limit the physical or mental ability to do basic work activities). Moreover, the ALJ reasonably noted that despite her combined impairments, the medical evidence did not document meeting or equaling listing-level severity, individually or in combination, as to Plaintiff's physical and mental impairments, (Tr. 16; Finding No. 6). *See Hen v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("the burden of proof lies with the claimant at steps one through four of the [sequential evaluation process]," including proving presumptive disability by meeting a listing).

Further, in relation to Plaintiff's argument that her anxiety and depression met or equaled the criteria set forth in Sections 12.04 and 12.06 of the Listing of Impairments, the ALJ reasonably found that Plaintiff was not subject to mental impairments satisfying the "Paragraph B" criteria of at least one extreme or two marked limitations in a broad area of functioning. These limitations include understanding, remembering, or applying information; interacting with others; concentrating, persisting,

12

or maintaining pace; and adapting or managing themselves; as required by Sections 12.04 and 12.06 of the Listing of Impairments, (Tr. 16; Finding No. 6). *See* 20 C.F.R. 404 Subpart P, Appendix 1.

Contrary to Plaintiff's argument that the ALJ did not rely on medical evidence in making his justifiable step three determination that Plaintiff's alleged anxiety and depression were not of listing level severity, the ALJ provided a thorough discussion of the mental health evidence of record as to Plaintiff's anxiety and depression in his reasonable RFC evaluation and finding, (Tr. 17-22; Finding No. 7). As a result, the ALJ's RFC evaluation provides additional substantial support for his prior step three analysis under 12.04 and 12.06. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (unpublished) (finding that an ALJ appropriately considered a claimant's combined impairments at step three in part because "[t]he ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings").

Thus, the ALJ complied with his step three requirements and Plaintiff has not met her burden of proof at step three of the sequential evaluation. *See Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1987) (it is the claimant's burden to prove the severity of her impairments).

Contrary to Plaintiff's argument, in arriving at his justifiable RFC finding, the ALJ properly evaluated Dr. Thomas's opinions as well as those of Ms. McCullun, the ALJ pointed out that the total evidence of record did not support both medical sources opinions, including their own examination findings during the relevant period. Thus, the ALJ reasonably accorded "minimal weight" to their respective opinions, (Tr. 21-22). *See Dyer v. Soc. Sec. Admin*, 568 F.App'x 422, 425 (6th Cir. 2014) (unpublished) (the opinion of a treating source may be discounted "where that opinion was inconsistent with other evidence of record or the assessment relied on subjective symptoms without the support of objective findings").

Moreover, in support of his reasonable RFC finding, the ALJ justifiably accorded "some weight" to the opinions from state agency psychologists Drs. Barnfield and Mulder that Plaintiff was not subject to a severe mental impairment. Although the ALJ reasonably found that their respective opinions appeared to be somewhat in excess of the record evidence, they were generally consistent with a preponderance of the evidence to the extent that their respective opinions found Plaintiff not disabled due to her alleged mental impairments. (Tr. 22). Of further significant importance, the ALJ reasonably accorded weight to the opinion of state agency physician, Dr. Dawson, noting that his opinion was consistent with the evidence, (Tr. 22). *See McGrew v. Comm'r of*

*Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("State agency medical . . . consultants . . . are highly qualified physicians and psychologists . . . who are also experts in Social Security disability evaluation.")

In her brief to the Court, Plaintiff does not adequately explain why the ALJ's assessment of her physical and mental abilities was unreasonable in light of the probative evidence set forth above. Instead, as noted above, Plaintiff provides a brief incomplete summary of her past diagnoses and treatment with conclusory arguments that she meets or equals Listings 2.07, 12.04 and 12.06 of the Listing of Impairments and that the ALJ's justifiable decision was not supported by substantial evidence. In doing so, Plaintiff essentially ignores the substantial evidence of record supporting the ALJ's justifiable ultimate decision that Plaintiff was not disabled under the Act.

Thus, the ALJ justifiably found that between Plaintiff's amended alleged disability onset date of February 1, 2017, and his December 5, 2018, decision, Plaintiff did not have physical or mental limitations of listing level severity or beyond those accounted for by his reasonable RFC finding and his well-reasoned evaluation of Plaintiff's alleged impairments that is supported by substantial evidence. The ALJ carefully considered and discussed relevant medical evidence, including the findings and opinions from Plaintiff's treating medical sources, as well as state agency

medical consultants, in reasonably determining that Plaintiff did not meet or equal the required severity level of an impairment or impairments under the Listing of Impairments, and that she retained the RFC to perform activities associated with unskilled, medium exertion work, (Tr. 15-22: Finding Nos. 5, 6, 7). *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (unpublished) (the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's RFC).

Contrary to Plaintiff's largely undeveloped argument that the ALJ's decision was not supported by substantial evidence and that the ALJ did not properly evaluate her medical conditions, the ALJ specifically discussed the objective medical evidence associated with Plaintiff's complaints of allegedly disabling conditions, including consideration of chronologically relevant medical records, (Tr. 587, 704, 717, 836, 840, 888, 1022, 1089, 1092), Dr. Thomas's and Ms. McCullen's check-box form assessments, (Tr. 1009-1013, 1086-1087, 1162-1163), and the opinions of state agency reviewing medical and mental health consultants, Drs. Dawson, Barnfield, and Mulder, (Tr. 77-78, 121-122, 123-126). *See Richardson v. Perales*, 402 U.S. at 399 (1971).

Moreover, in support of her deficient argument that the ALJ's December 2018 decision is not supported by substantial evidence, Plaintiff simply argues "the combined effects of [Plaintiff's]

16

physical and mental impairments, reflect that she could not perform a wide range of even sedentary work on a regular and sustained basis." [DE 13-1, at 7]. Contrary to Plaintiff's unsupported arguments, the ALJ provided a reasonable RFC finding with a thorough six-page evaluation of Plaintiff's alleged impairments that is supported by substantial evidence, as set forth above. (Tr. 17-22: Finding No. 7).

Plaintiff further argues that the ALJ did not consider the effects of her subjective complaints in assessing her RFC. [DE 13-1, at 8-9]. As noted, the Court has addressed Plaintiff's arguments as to the ALJ's reasonable evaluation of the evidence earlier in the discussion of the relevant substantial evidence set forth above. Plaintiff's argument, which purports to challenge the ALJ's treatment of lay testimony and application of the so-called "two-step process" under Social Security Ruling 96-7p, are in essence challenges to the ALJ's finding that Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not supported by the record.

However, the ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court. The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek,* 139 S.Ct. at 1157; *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.

2003). As set forth, in part, above, Plaintiff's overall treatment records and inconsistencies in the evidence through the date of the ALJ's decision detract from *Plaintiff's claims of disabling symptoms. See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (unpublished) ("[t]his court does not weigh evidence, assess credibility or resolve conflicts in testimony – that's the ALJ's job."); see also 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence). Because the ALJ's findings as to extent of Plaintiff's work-related limitations and her subjective complaints were supported by substantial evidence, the Court shall affirm the ALJ's decision. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

Of overarching importance, substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). To override the agency's factual finding, therefore, a reviewing court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). Plaintiff's challenges to the ALJ's findings fail under this standard.

For the foregoing reasons, the Commissioner's final decision is supported by substantial evidence and shall be affirmed by the Court. Accordingly,

**IT IS SO ORDERED** as follows:

(1) Plaintiff Lisa A. Dixon's Motion for Summary Judgment [DE 13] is **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 17] is **GRANTED**; and

(3) A Judgment shall be entered contemporaneously herewith.

This 24th day of May, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge